# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Nine Cellular Telephones (Subject Device 1, Subject Device 2, Subject Device 3, Subject Device 4, Subject Device 5, Subject Device 6, Subject Device 7, Subject Device 8, & Subject Device 9), currently in law enforcement custody at 3600 S Lake Drive, St. Francis, WI, as further described in Attachment A

Case No. 26-885M(NJ)

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the Eastern District of Wisconsin *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 4/29/2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. Nancy Joseph .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ________.

Date and time issued: 4/15/2026 @ 2:48 p.m.

Nancy Joseph
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

*Executing officer's signature*

*Printed name and title*

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

The property to be searched:

1. Black iPhone cellular phone, unknown serial number (Item #10)(“**Subject Device 1**”);
2. Black Samsung cellular phone, unknown serial number (Item #11) (“**Subject Device 2**”);
3. Black iPhone cellular phone, unknown serial number (Item # 12) (“**Subject Device 3**”);
4. Black Motorola cellular phone, unknown serial number (Item # 14) (“**Subject Device 4**”);
5. Samsung cellular phone with multi-color case, unknown serial number (Item # 15) (“**Subject Device 5**”);
6. Blue Samsung cellular phone, unknown serial number (Item # 16) (“**Subject Device 6**”);
7. Black Samsung cellular phone, unknown serial number (Item # 17) (“**Subject Device 7**”);
8. Dark blue Samsung cellular phone, unknown serial number (Item # 21) (“**Subject Device 8**”); and
9. Red iPhone cellular phone, unknown serial number (Item # 22) (“**Subject Device 9**”).

**Subject Devices 1** through **9** are collectively identified herein as "**the Subject Devices**." The **Subject Devices** are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Drive, St. Francis, Wisconsin 53235.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1. All records on the Subject Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841, 843(b), and 846 and Title 18, United States Code, Sections 922(g) and 924(c), and involving Edgardo S. Rivera from January 1, 2025 to the present, including:

a. lists of customers and related identifying information;

b. Photographs and videos;

c. text messages/call logs;

d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

f. any information recording the schedule or travel of Edgardo S. Rivera;

g. any information related to the source of the firearm located during the search warrant at Rivera's residence including the source of that firearm, Rivera's knowledge and/or possession of that firearm, and the purpose of Rivera's possession/use of that firearm; and

h. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Subject Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>Nine Cellular Telephones (Subject Device 1, Subject Device 2, Subject Device 3, Subject Device 4, Subject Device 5, Subject Device 6, Subject Device 7, Subject Device 8, & Subject Device 9), currently in law enforcement custody at 3600 S Lake Drive, St. Francis, WI, as further described in Attachment A | Case No. 26-885M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), & 846 | Distribution and conspiracy to possess with the intent to distribute controlled substances, and illegal use of a communications facility in furtherance of drug trafficking. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ____________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MANUEL LUCENA-MARTINEZ Digitally signed by MANUEL LUCENA-MARTINEZ Date: 2026.04.13 17:23:27 -05'00'

*Applicant's signature*

Manuel Lucena-Martinez, FBI TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 4/15/2026

Nancy Joseph

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A SEARCH WARRANT**

I, Manuel Lucena-Martinez, being first duly sworn, hereby depose and state as follows:

**<u>BACKGROUND</u>**

1. I have been employed with the Milwaukee Police Department (MPD) as a full time sworn police officer since January 2013. I am currently assigned as a Task Force officer (TFO) to the Milwaukee Area Safe Streets Task Force (MASSTF) and the Federal Bureau of Investigation (FBI) Milwaukee Field Office. In March of 2025, I was officially sworn in as a federal task force officer to work with the FBI's gang task force, which provides me with the authorization to present sworn affidavits in support of federal search warrant applications. I have received training and have experience in the area of controlled substances investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substances laws to include other violations associated with the trafficking of controlled substances. I have participated in numerous drug investigations utilizing various means of investigation including but not limited to, a wire investigation, the execution of search warrants, the use of subpoenas, and the use of informants.

2. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents

and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. Based on my training, experience, and participation in drug trafficking investigations, I know and have observed the following:

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States;

b. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

c. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

d. I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

e. I know that large-scale drug traffickers will frequently use firearms to protect their narcotics, proceeds, and persons, since such drug traffickers are reticent to involve law enforcement in their affairs;

f. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer,

concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control;

g. I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

h. It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time. It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, offices, or personal residence.

i. It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money

order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

j. I know large-scale drug traffickers often use electronic equipment such as telephones, pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

k. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

l. I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization; and

m. I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering activities to communicate with their

associates and financial institutions; That drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices;

n. Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or money laundering activities; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages,

digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

4. This affidavit is submitted in support of an application for a search warrant seeking authorization to examine one electronic device, described more fully in Attachment A and currently in law enforcement's possession, and the extraction from those devices of electronically stored information, described more fully in Attachment B. Law enforcement believes such electronically stored information will constitute evidence of (i) distribution, and possession with intent to distribute, of controlled substances; (ii) use of a communication facility in furtherance of drug trafficking; (iii) conspiracy to distribute controlled substances, (iv) felon in possession of a firearm; and (v) use of a firearm in furtherance of drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846 and Title 18, United States Code, Sections 922(g) and 924(c) (hereinafter "Target Offenses."

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5. The property to be searched includes:

a. Black iPhone cellular phone, unknown serial number (Item #10)("**Subject Device 1**");

b. Black Samsung cellular phone, unknown serial number (Item #11) ("**Subject Device 2**");

c. Black iPhone cellular phone, unknown serial number (Item # 12) ("**Subject Device 3**");

d. Black Motorola cellular phone, unknown serial number (Item #

14) ("**Subject Device 4**");

e. Samsung cellular phone with multi-color case, unknown serial number (Item # 15) ("**Subject Device 5**");

f. Blue Samsung cellular phone, unknown serial number (Item # 16) ("**Subject Device 6**");

g. Black Samsung cellular phone, unknown serial number (Item # 17) ("**Subject Device 7**");

h. Dark blue Samsung cellular phone, unknown serial number (Item # 21) ("**Subject Device 8**"); and

i. Red iPhone cellular phone, unknown serial number (Item # 22) ("**Subject Device 9**").

6. **Subject Devices 1** through **9** are collectively identified herein as "**the Subject Devices**." The **Subject Devices** are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Drive, St. Francis, Wisconsin 53235.

7. The applied-for warrant would authorize the forensic examination of the **Subject Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

**<u>PROBABLE CAUSE</u>**

8. That affiant states that on Saturday, March 28, 2026, at approximately 2:45pm, members of the Milwaukee Police Department, Milwaukee County Sheriff's Office, Wisconsin State Patrol, and Federal Bureau of Investigation executed a knock

search warrant at the address of 2828 S. 53rd Street, located in the City and County of Milwaukee, regarding an ongoing narcotics investigation. The search warrant was reviewed by Assistant District Attorney Francesco Mineo and approved by the Honorable Susan Roth, Judicial Court Commissioner of the First Judicial District of Wisconsin.

9. The target of the investigation is identified as Edgardo S. Rivera (W/M, XX/XX/1988) aka "Pupi". Edgardo Rivera has been a target of law enforcement since November 2024 and was the subject of a drug investigation, including controlled buys, dating back to that time. Rivera was arrested in September 2025, but has not yet been charged related to that initial investigation. At the time of his prior arrest, case agents seized at least one cell phone from Rivera's possession which they believe he used to arrange for these controlled buys. I am seeking authorization to search for evidence of his involvement in the Target Offenses since January 1, 2025. I believe this timeframe is necessary to analyze the pattern of use to establish the user or users of each of the **SUBJECT DEVICES**, to identify Rivera's drug customers, co-conspirators, and sources of supply, to establish the scope of any conspiracy, and to show Rivera's continuing drug-related contacts before, during, and after his 2025 arrest related to drug trafficking.

10. It should be noted that Rivera was developed as a suspect regarding an unrelated Sensitive Crimes Investigation (MPD Case # C2601070104). Members of the Milwaukee Police Department Special Investigations Division (Fugitive Apprehension Unit) later observed Rivera leave his residence (2828 S. 53rd Street) in a 2014 Black

Toyota Camry (WI Plate AXX7177, VIN #4T4BF1FK9ER360374). Squad 9421 (PO Joseph Serio and PO Daniel Sutyak) later conducted a traffic stop at 3080 S. Stratton Drive, Milwaukee, WI 53219, where Rivera was taken into custody without incident related to an ongoing investigation into the sexual assault of a minor. Rivera has since been charged in Milwaukee County with one count of 1st Degree Child Sex Assault—Sexual Contact or Sexual Intercourse with Person Under Age 13 in case 2026CF1518.

11. Upon making entry into the residence (2828 S. 53rd Street), law enforcement located no one inside the residence;

12. Located in the basement of the residence was a cooler that contained two (2) clear sealable Tupperware containers that contained a white chunky substance, suspected to be Cocaine powder. Located inside the cooler was a clear orange pill bottle with a white bottle cap that contained suspected MDMA/Methamphetamine pills;

13. Located next to the same cooler were empty packaging consistent with packaging used for kilogram quantities of narcotics, a pair of scissors, a metal plate, exacto knife set, an open box of "That's Smart" brand plastic sandwich bags, digital measuring scales and spoon that all had white powdery residue on it that was suspected to be Cocaine;

14. Based on my training and experience, I believe that these items are consistent with those used to process and package controlled substances for distribution.

15. Located in the northwest bedroom of the residence behind a false vent cover in the wall was a black in color Hi-Point semiautomatic handgun (Serial #

X6001429) inside of a white cardboard box. Located inside the same northwest bedroom inside a safe in the closet was a US Passport issued to "Edgardo Rivera"; That affiant knows a records check revealed that Rivera was convicted of Title 21, United States Code 846 (Conspiracy to Distribute Controlled Substances) via United States vs. Quiles-Rivera (Case #2016CR00087). That affiant knows that this conviction remains of record and unreversed, thus prohibiting Rivera from possessing firearms;

16. Further, based on my training and experience, I believe that the firearm being possessed under these circumstances and in the same residence with large amounts of controlled substances and other items of drug paraphernalia is consistent with the firearm being used to protect Rivera's drug operation.

17. While at the FBI Milwaukee Field Office, TFO Eulia Boyd subjected a sample of the suspected Cocaine to a Mobile Detect Cocaine field test (DCO), which yielded positive results for Cocaine HCI with a total weight of 2,949.6 grams. TFO Boyd subjected a sample of the suspected MDMA/Methamphetamine to a Mobile Detect Meth Test (DME), which yielded positive results for MDMA/Methamphetamine with a total weight of 16.8 grams; Based on my training and experience, I believe that these quantities of controlled substances are inconsistent with personal use amounts and are more consistent with quantities typically held for distribution.

18. Located inside the second-floor northwest bedroom on the dresser was a Black iPhone cellular phone (FBI Inventory Item #10)(**Subject Device 1**);

19. Located inside the second-floor northwest bedroom on the table was a Black Samsung cellular phone (FBI Inventory #Item 11) (**Subject Device 2**);

20. Located inside the second-floor northwest bedroom dresser was a Black iPhone (FBI Inventory Item #12)(**Subject Device 3**);

21. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Black Motorola cellular phone (FBI Inventory Item #14) (**Subject Device 4**);

22. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Samsung cellular phone with multi-color case (FBI Inventory Item #15) (**Subject Device 5**);

23. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Blue Samsung cellular phone (FBI Inventory Item #16)(**Subject Device 6**);

24. Located inside the second-floor southeast bedroom inside of a bag on the floor was a Black Samsung cellular phone (FBI Inventory Item #17)(**Subject Device 7**);

25. Search incident to arrest, located on Rivera's person was a Dark Blue Samsung cellular phone (FBI Inventory Item #21)(**Subject Device 8**) and a Red iPhone cellular phone (FBI Inventory Item #22)(**Subject Device 9**);

26. Due to affiant's training and experience, the manner in which the narcotics were packaged, packaging material, the presence of a firearm, multiple cellphones, the above listed items are consistent with street level drug sales of narcotics; Rivera has since been charged in Milwaukee County with possession of cocaine with the intent to deliver (use of a dangerous weapon); possession of methamphetamine with the intent to deliver (use of a dangerous weapon), keeper of a drug place, and possession of a firearm by out of state felon in case 2026CF1519.

27. That affiant states that the recovered cell phones were inventoried at the

FBI Inventory respectively and are currently stored at the FBI Milwaukee Field Office, which is located at 3600 S. Lake Drive, St. Francis, Wisconsin;

28. Based on my training and experience, I know that drug traffickers commonly use cell phones (such as the **Subject Devices**) to communicate with drug customers, drug sources, and other co-conspirators via call, text message, applications, and other means. I also know that it is common for said traffickers to also take and store photographs and video of drugs, firearms, drug proceeds, and other evidence on cell phones (such as the **Subject Devices**) under their control. I also know that it is common for traffickers to have multiple cellular phones for different purposes (e.g., one phone used to contact a drug supplier and another for drug customers) and that the purpose of this is to compartmentalize one's operation in case of law enforcement investigation. I also know that persons such as Rivera who are convicted felons cannot legally purchase firearms and often will arrange to purchase firearms unlawfully via call, text message, applications, etc.

## TECHNICAL TERMS

29. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless

telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play

audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.samsung.com, I believe that the **Subject Devices** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31. Based on my knowledge, training, and experience, I know that electronic devices – like the **Subject Devices** -- can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

32. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of their use, who used them,

and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34. *Manner of execution.* Because this warrant seeks only permission to examine **Subject Devices** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.

**ATTACHMENT A**
**PROPERTY TO BE SEARCHED**

The property to be searched:

1. Black iPhone cellular phone, unknown serial number (Item #10)("**Subject Device 1**");
2. Black Samsung cellular phone, unknown serial number (Item #11) ("**Subject Device 2**");
3. Black iPhone cellular phone, unknown serial number (Item # 12) ("**Subject Device 3**");
4. Black Motorola cellular phone, unknown serial number (Item # 14) ("**Subject Device 4**");
5. Samsung cellular phone with multi-color case, unknown serial number (Item # 15) ("**Subject Device 5**");
6. Blue Samsung cellular phone, unknown serial number (Item # 16) ("**Subject Device 6**");
7. Black Samsung cellular phone, unknown serial number (Item # 17) ("**Subject Device 7**");
8. Dark blue Samsung cellular phone, unknown serial number (Item # 21) ("**Subject Device 8**"); and
9. Red iPhone cellular phone, unknown serial number (Item # 22) ("**Subject Device 9**").

**Subject Devices 1** through **9** are collectively identified herein as "**the Subject Devices**."
The **Subject Devices** are currently located at the Federal Bureau of Investigations (FBI) field office, located at 3600 S Lake Drive, St. Francis, Wisconsin 53235.

**ATTACHMENT B**
**ITEMS TO BE SEIZED**

1. All records on the Subject Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841, 843(b), and 846 and Title 18, United States Code, Sections 922(g) and 924(c), and involving Edgardo S. Rivera from January 1, 2025 to the present, including:

   a. lists of customers and related identifying information;

   b. Photographs and videos;

   c. text messages/call logs;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording the schedule or travel of Edgardo S. Rivera;

   g. any information related to the source of the firearm located during the search warrant at Rivera's residence including the source of that firearm, Rivera's knowledge and/or possession of that firearm, and the purpose of Rivera's possession/use of that firearm; and

   h. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **Subject Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.